HOWARD *v.* SECRETARY OF STATE.

1. LICENSES—MALT PRODUCTS—REGULATION—TAXATION—STATUTES.
   Affinity between malt products, especially wort, and beer with alcoholic content and effect is so close that legislature has general power to control traffic in them by license, taxation, or otherwise (Act No. 100, Pub. Acts 1931).

2. SAME—DISCRETION TO GRANT LICENSE—STATUTES.
   Power to license business does not presuppose that statute affecting it is license law, nor, if license law, that discretion is conferred on officer to grant or refuse license.

3. STATUTES—CONSTRUCTION—"SHALL"—"MAY."
   While it is familiar rule of construction that "shall" may be read as "may" in statute, or *vice versa,* it does not follow that such reading is necessary to carry out purpose of law, but statute must be examined to ascertain its character and purport.

4. TAXATION—MALT PRODUCTS—REGULATION—LICENSES—STATUTES.
   Primary purpose of Act No. 100, Pub. Acts 1931, is to raise
   money by taxing manufacture of malt products, and its reg-
   ulatory provisions are but incidental to collection of taxes.

5. LICENSES—REGISTRATION OF MANUFACTURER OF MALT PRODUCTS—
   CONSTRUCTION OF STATUTE.
   Enumeration of conditions under which secretary of State may
   refuse first registration to manufacturer of malt products
   impliedly excludes all other conditions (Act No. 100, Pub.
   Acts 1931, § 12).

6. SAME—DISCRETION TO REFUSE INITIAL REGISTRATION.
   Act No. 100, Pub. Acts 1931, providing for registration of
   manufacturers of malt products, confers no discretion on
   secretary of State to refuse initial registration, except as it
   may be found in section 12 of said act.

Mandamus by James Howard, doing business as
the Cedar Products Company, to compel Frank D.
Fitzgerald, secretary of State, to issue a certificate
of registration as manufacturer of wort under Act
No. 100, Pub. Acts 1931. Submitted October 19,
1932. (Calendar No. 36,921.) Writ granted De-
cember 6, 1932.

*Chawke & Sloan,* for plaintiff.

*Paul W. Voorhies,* Attorney General, and *Hugh
E. Lillie,* Assistant Attorney General, for defend-
ant.

FEAD, J. This is mandamus to compel the secre-
tary of State to issue plaintiff a certificate of regis-
tration as a manufacturer of wort, under Act No.
100, Pub. Acts 1931. Defendant claims the act in-
vests him with discretion to grant or refuse licenses
and justifies refusal upon grounds thus stated in
defendant's brief:

"The answer to the petition in this case shows
that petitioner did manufacture wort from Au-

gust 24 to September 28, 1932, without the consent of the respondent, and that petitioner did not apply for a certificate of registration to manufacture wort until September 28, 1932, after he was notified to discontinue business. It also shows that petitioner did not purchase enough malt tax stamps to pay the tax on all the wort sold by him during that period. In addition to this it shows that petitioner neglected to inform the respondent's agents as to the true ownership of said business and that it was necessary to keep inspectors on the premises where petitioner manufactured wort almost continuously to check the amount of wort sold by him. It further shows that petitioner has no property and had to borrow the money with which to start business and that he has not paid his full rent since that time.''

In addition, it is claimed that plaintiff has been convicted in Federal court of possession of smuggled liquor. While not alleged in the return to the order to show cause, the claim is mentioned because of its relation to the power of the secretary of State.

Act No. 100, Pub. Acts 1931, superseded Act No. 304, Pub. Acts 1929, 1 Comp. Laws 1929, §§ 3619–3629, which provided a "privilege tax," by way of stamp tax per gallon or pound, on the business of selling or manufacturing malt syrup or malt extract or wort for other than medicinal or commercial baking purposes. The title to Act No. 100 begins, "An act to impose a privilege tax," etc. It provides a stamp tax per gallon or pound on malt syrup, malt extract, liquid malt, or wort, and a "privilege tax" upon automobiles used in the business of selling or transporting such products. In addition, it requires manufacturers and sellers of the products to register with the secretary of State

and to pay "registration fees." The provisions of the act, of interest here, are (italics ours):

"Section 1.  *  *  *  No person shall engage in the business defined herein as that of manufacturer of said articles unless he is the holder of a certificate of registration so to do issued as herein provided which is still in effect. Such certificate of registration *shall* be issued by the secretary of State upon the filing of a written application, accompanied by a registration fee of two hundred fifty dollars.  *  *  *  Any person violating the provisions of this section shall be deemed guilty of a misdemeanor," etc.

"Sec. 3.  The secretary of State may revoke any certificate issued as provided herein for any failure to comply with or any violation of the provisions of this act, upon four days' notice in writing of, and a hearing on the charges upon which such revocation is contemplated.  *  *  *  The secretary of State *may* refuse to issue a new or subsequent certificate to the holder of or former possessor of a certificate hereunder who shall have failed to comply with or shall have violated any provision of this act.  *  *  *

"Sec. 12.  The secretary of State or his assistants are hereby authorized and empowered to examine the books, papers and records of any distributor, dealer, or manufacturer in this State for the purpose of determining whether the tax as imposed by this act has been fully paid, and shall have power to investigate and examine according to law any premises where such malt syrup or malt extract or liquid malt or wort is manufactured, possessed, or stored for the purpose of sale, or sold, for the purpose of determining whether the provisions of this act are being obeyed. Any refusal to permit such examination of said books, papers and records

or the investigation and examination of such premises, shall constitute sufficient reason for the revocation of a certificate or the refusal to issue a certificate and shall be deemed a misdemeanor punishable as provided in section thirteen of this act.''

Section 18 distributes the tax, after payment of necessary expenses in the enforcement of the act, for the care of tuberculosis patients and provides for the construction of a tuberculosis sanatorium at a cost not to exceed $400,000.

The affinity between malt products, especially wort, and beer with alcoholic content and effect is so close that there can be no doubt of the general power of the legislature to control the traffic in them by license, taxation, or otherwise. We are not here concerned with limitations on the power because it is conceded that Act No. 100 is valid.

The power to license, however, does not presuppose that a statute affecting the business is a license law; nor, if a license law, that discretion is conferred on an officer to grant or refuse licenses. Also, while it is a familiar rule of construction that ''shall'' may be read as ''may'' in a statute, or *vice versa,* it does not follow that such reading is necessary to carry out the purpose of the law. The statute must be examined to ascertain its character and purport.

The title declares the purpose of the act to be to impose a ''privilege tax.'' The law conforms to the title. The large sums appropriated by section 18 demonstrate that the raising of money is the primary purpose of the law, not regulation of the business. The regulatory provisions are incidental to the collection of the taxes.

The fact that, in section 3, revocation of certificate of registration is provided, with machinery

set up, and the permissive "may" is used in connection with the powers of the secretary of State on issuance of a new certificate to a former holder, is persuasive that the use of the imperative "shall" in section 1 with reference to initial registration was not an oversight. The intent of the legislature is put beyond doubt by section 12, which enumerates the conditions under which the secretary of State may refuse first registration, and by such enumeration impliedly excludes all other conditions. For good measure, it may be noted that section 1 carries its own separate penalty clause, thus indicating the intention of the legislature that for the act of engaging in the business without registration one is subject to a specific penalty. The secretary of State is granted no power to add to it the penalty of refusal of registration.

In our opinion, the act confers no discretion on the secretary of State to refuse initial registration, except as it may be found in section 12, and the writ will issue, but without costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.